Thank you, Your Honor. Steve Wells on behalf of the appellants in this case. Steve Wells. May it please the Court, Counsel. The trial court here committed three fundamental errors that require reversal on the issue of duty, on the issue of proximate cause, and on the issue of Rule 56D. And I'd like to deal with the issue of duty first, if I may. In every case that's been cited by everybody in this case, the very first inquiry that a court makes when trying to determine whether a professional has a tort duty of care is to determine the nature of the services that it has been instructed to perform or that it has agreed to perform. Whether that case is Barstatt, that was cited by the appellees, whether it's Seeley, whether it's Luce, the very fundamental inquiry that a district court has to make in determining whether or not there's a tort duty is, what were its instructions? What were the obligations that it was supposed to perform under its contract? Well, since you mentioned those cases, what's wrong with the Luce case? Why shouldn't we follow Luce? It was very well analyzed by the Arizona court. Arizona's part of the circuit. Because in Luce, Your Honor, there were no instructions such as there were here. In other words, the fundamental problem here is that because the court never made an inquiry as to what the obligations were that were undertaken by Chicago title here, it differs from Luce. In Luce, there were no instructions to make a determination as to the validity of a second lien. And yet here, Chicago title was specific. The instructions have anything to do with the liability of a third party. Because that instruction is given by the third party, right? Well, because that sets forth the nature of the duties that it undertakes. Duty to whom? That's the question. Sure, but under the affiliated case, the inquiry for the court is what is it that they're doing? Are they exercising professional care? Are they exercising their professional discretion? Or are they mere messengers? Or are they mere clerks or ministers? Because if it's the latter, we're not arguing that if they were merely messengers that this court or any court should impose some sort of special duty on them. What we're saying is just like an engineer, when you undertake professional responsibilities where that is part of the instructions and you use those, you exercise your professional discretion and judgment, when you do that and just as an affiliated, if those obligations create risks to non-parties, then the court may say a tort duty arises out of those. But I always thought title matters were covered by the terms of the contract itself. Well, the instructions here, Your Honor, are what's really critical, I think. And those were what were ignored by the district court. And that's the critical point I want to impress upon this court. There were instructions in this case. And the instructions, they're at excerpts of the record ER 58. And the instructions from Centrum to the title company in this case were, you may record the leasehold deed of trust provided you are irrevocably committed to insure the enclosed mortgage on a mortgagee's extended basis with coverage of $10 million as a valid second lien against the leasehold property. Those instructions necessarily required Chicago title here to exercise professional judgment and skill. Like an engineer, like a professional in another context, not like a messenger, not like a clerk, not like a ministerial duty. Now, Centrum said itself, this is the testimony of Elizabeth Baker, it's at excerpts of the record 524, that Centrum was relying on Chicago title to determine validity. In other words, to determine whether these encumbrances were valid. In other words, Centrum has testified unequivocally that it did not view Chicago title as a mere messenger, as a clerk. May I just inquire on the scope of the duty? You focused immediately on the instructions. Do you think that it varies from case to case? In other words, there's not a freestanding duty, but that it's dependent on whether there's a duty depending on the factual issue? Yes, very much so, Your Honor. I'm not saying that in some cases there might not be, for example, engineer liability where the engineer's duties are well known. But I am saying, Your Honor, that the existence of the duty may depend on the nature of the work that's being performed. And the nature of the work that's being performed depends on the instructions in the agreement. What is the best Washington case that gives us a clue as to how the Washington Supreme Court would view this issue? I think affiliated FM, Your Honor, is the case that sets forth the principles that are to be relied upon here. The existence of the duty question there, again, the court looks at what was the nature of the defendant's duty in that case. Well, they were engineering duties. They were professional skill, exercise of professional diligence. Now, that involved what, fire insurance or something like that? That involved the design of a monorail system which resulted in a fire. And now, Chris, there are two cases, right? There's a Washington State case and there's a Ninth Circuit case. Which one are you referring to? The Washington State case, the Supreme Court case. Is that the monorail case? Yes, it is. I guess one of the obvious questions, and of course it's been raised by the parties, is certification. Because if we were to determine that there is a duty, it would seem to me that we really would be, in effect, adding another classification of professionals to this duty basket. And that would be fairly significant. It's not clear to me from the monorail case that the court would come out the same way. It might. But what's your view then on certification? Our position on that, Your Honor, is that there is the evidence in the record as to the nature of duties to be performed here is really not disputed. It is what I read to the court. It is those instructions. It is the duty to determine whether or not there is a valid second lien. And Centrum is clear about that, too. So I think that there's enough for this court to be able to say, we're not imposing a duty on a class of professionals here. We're saying in this context that, given the nature of the work that they performed, that there's a duty. But also the Washington Supreme Court in the earlier case did focus on issues of public policy and risk shifting and that sort of thing. And it would seem to me, just from reading the Supreme Court's case in that and other types of situations, that it really would be a state would be more appropriate to figure out the public policy balance you want in Washington rather than a federal court. I think that's fair, Your Honor. I think that's right. When we're talking about the policy considerations that apply here, I do think that that probably is a state court matter. So I'm not quite sure what your answer to Judge McEwen's first question was. Have we answered that one yet? No. I think the answer is this court can decide because of the special nature. I mean, we always can decide. It's not a question of authority. I don't see a conflict between where we're limiting our argument to the nature of the work that was performed in this case. I think the question was should we certify to the Supreme Court of Washington, yes or no? So the answer is we would be perfectly content with this court to do that, and that would be fine. Nobody asked the district court to certify the question. Is that correct? That's true. Did it come up at all? I don't believe it did, Your Honor. No, I don't believe it did. The problem with the district court's opinion here when it got to the balancing factors that you raised, Judge McEwen, is that it assumed when it went into the balancing test, it assumed that the nature of the duties that were to be performed here were purely ministerial. It made no findings to that effect. It recited no evidence to that effect. But all the parade of horribles that were trotted out by Chicago title in this case and adopted by the district court, they all assume that this is imposing a duty on Chicago title that it didn't already undertake. That is, the duty to determine whether or not there was a valid second lien. And it did that because of the assumption that this was purely ministerial, despite the evidence in the record to the contrary. And that's the problem with the analysis that the court undertook on the balancing test that's mandated by affiliate, essentially. So if the court had conducted an appropriate balancing test, given the nature of the work that was to be undertaken here, it would have, for example, it would have noted that someone before the filing needs to determine whether or not this was a valid second lien. Nobody made that determination, putting the property owner at risk here. Centrum delegated that to a professional. The professional was in control, not the property owner. The property owner had no control over that determination. But the court ignored that. And the court found that there would be burdens and it would slow the recording system down. But that all assumes, that all assumes that this was a different duty, that the court would impose a different duty than what Chicago title had already undertaken. And that was to determine whether or not this was a valid second lien. So that's really the fundamental, those are sort of the fundamental problems on the duty issue, it seems to me. Now, I know my opposing counsel is going to stand up and say, no, no, they didn't have a duty, they didn't undertake a duty to determine whether or not there was a valid second lien. All they said was the instructions are to record if you can insure it. But that's not what it says. It doesn't say you may record if this is insurable. It says you may record the leasehold DOT if you are irrevocably committed to insure the enclosed mortgage as a valid second lien against the leasehold property. So it doesn't hinge just on insurability. It hinges on validity of the second lien. And Centrum, who gave the instructions, very, very clear that that was, that instruction was intended to have the Chicago title determine the validity of that lien, because Centrum was not making that determination. The fact that no one made that determination, put the property owner here, Centurion, at huge risk. Now, there are various issues raised as to proximate cause, and I think we deal with them pretty well in our briefs. I really just wanted to say a couple of things about those. Those are all issues of fact. All of those are issues of fact. And, in fact, if there was a dispute about the nature of the duties that were undertaken by Chicago title here, that, too, would be an issue of fact. Affiliated FM says that the duty issue is an issue for the court, and we understand that. But Affiliated FM doesn't say where there are factual disputes. You get to decide that on summary judgment. So both approximate cause issues, and if the court found that there was some dispute about what the nature of the services to be provided were, those should be fact issues that were decided at trial. The balancing, though, I agree with you, is more of a state issue, and that's why we're perfectly happy to have this case decide that balancing. I'd like to reserve the remainder of my time. You may do so, counsel. Thank you. We'll hear from Chicago title. Good morning, Your Honors. My name is Steve Sirianni, and I'm representing the respondent, Chicago title. Your Honors, I'm going to focus on the issues that counsel just focused on, but I'd be happy to entertain any questions along the way. The first issue relates to the effect of the ruling that is sought by the appellants. Quite simply, appellants' negligent recording theory, if transformed into a cause of action, would entirely undermine the Barstad and the Clickman cases, which together hold that a title company owes no duty in tort to search for and disclose possible defects while it's doing a title commitment. Any liabilities on the policy only. Your Honors, think of the title insurance process and the real estate closing process as a continuum. At the beginning, title is ordered by whoever wants the insurance, and a title search is done and a commitment is generated. And the commitment says not that we guarantee that this is an abstract of title and discloses all possible defects. It's perfectly clear that the commitment is only an undertaking to insure, subject to certain exclusions and exceptions. Now, during that process, it had been argued for years that the title company has abstractors' liability. It has the duty and negligence to disclose all known defects. That was clearly rejected in the Barstad case as to those who have insurance policies, those who ordered insurance, and it was clearly rejected in the Clickman case as to those who haven't ordered insurance. Well, Counsel, what do we do with the language in the instructions itself, which your opposing counsel suggests that this case is taken out of the general class that you just described? Sure. And, Your Honors, I'd like to turn to the language of the instruction itself. It's at ER 58. You may record the leasehold deed of trust, provided you are irrevocably committed to insure the enclosed mortgage, and then there's an ellipsis, as a valid second lien against the leasehold property. This is a request for insurance. It's a statement that if you can insure, if you can issue a commitment and a subsequent policy for title insurance, then you are authorized to record. It is not a statement that demands a guarantee of the condition of title. It is not a statement that demands a warranty that there are no liens or encumbrances, and that, in fact, the mortgage is valid. The statement, valid second lien, is simply a description of the insured interest. It's like saying, it's no different than saying, we urge you to insure that a leasehold interest is valid or that an easement is valid. It's simply a description, those three words are, of the interest being insured. Secondly, this is an instruction from a third party. It's an instruction from Centrum, who, I have to tell you, had a claim under the policy, and we paid it. We recognize our obligations to those who give us instructions, but CP3 didn't give us any instructions. Counsel would have you believe that they were a stranger to the transaction. If that's the case, they have no rights under the Clickman case to piggyback on to the instructions that were given by others. Affiliated FM, as your opponent argued, recognizes, at least in some situation, that a person in Chicago Title's position might have reasonable care tort duties outside of the contract of third parties. That's correct, Your Honor. At least in some situation. Now, why is this particular situation not come within the coverage of Affiliated FM's language? The first and most obvious reason, Your Honor, is because Affiliated FM turned on the fact that there was a danger of personal injury, and the personal injury cases are much broader and more liberal in respect of the duties that they're willing to impose, and that's because of the importance of personal safety. So that's the first reason, and the Affiliated FM court was quite clear that that was an influence on it. The second reason, Your Honor, is that the Washington courts have already decided that, with all respect, you're not writing on a blank slate, and Judge McKeon, you indicated that there's some concern about the Ninth Circuit extending the reach of Washington law beyond some modest toe in the water, and I would respectfully suggest that the Affiliated FM case represents Washington law in respect of possible personal injury cases, but what happened in Barstead and in Clickman, which represent Washington law in the title insurance area, is that third parties were denied coverage, and that's a decision, a policy decision, that's been made pursuant to statute in Washington, and it's an important public policy that would be difficult to overturn. Now, that brings me back to the argument I began with. Clickman and Barstead would be completely undermined. Let me ask you about those cases, Clickman and Barstead, in terms of the posture in which it was determined that there wasn't a duty. Were those in preliminary commitments? Had there actually been a transaction that had gone through in those cases? Oh, yes, Your Honor. At the conclusion, and a failure to follow instructions? There's no reference in the cases to failure to follow instructions. I mean, that's what makes this different too, doesn't it? It is a difference. I'm not sure it's a distinction. Why not? Because the third parties, the third party in this case, in our case, didn't give instructions, and the question is whether they are entitled to rely on the instructions that were given by the party who sought insurance. More than that, there's a question of what the instructions mean. And the language is very Barsteadian, if you'll permit that term. The language of the instructions follows the Barstead reasoning. It says you can record when you are in a position to insure, and then the question is, insure what? And the answer is a valid second lien. But nobody asked these folks for an abstract of title. Nobody asked Chicago Title for a warranty that there's no other defect and that there's a valid first lien. They were simply asked to insure. They did insure, and it turned out that they were wrong. It turned out that there was some issue of validity, and they paid the claim that their insured made. Appellants are not insured. If this is an open policy question in Washington, what's wrong with Seeley v. Seymour? Why shouldn't we follow that? Well, Your Honor, that was a special case, and the Arizona case, the loose case, made the same point. The Seeley case involved a contract between a public agency, the recorder's office, and the title company. The title company undertook to properly record instruments, and there was almost a public trust aspect to that case. Yeah, but there's nothing in the case that indicates the court depended particularly on that contract. Well, with respect, Your Honor, I think it did, and I think it also depended on the fact there was a second distinction, and that is that on the face of the recorded instrument there were flaws and defects. There was a facial invalidity. There was a lack of acknowledgment, as I recall. And so for both reasons, Your Honor, and because subsequent California cases haven't cited the Seeley case, I'm not sure that it's good law, it seems to me, but it's only good law in California, and with respect to the very narrow facts to which it applies. I think Luce is a much more apt illustration of how the law actually works. Well, except Luce, I think, depends on the Arizona law that says almost in effect, you know, the party's limited to the contract. I don't think there's any such rule in Washington. Well, Your Honor, there is. The Clickman and the Barstead cases both reject the notion that third parties have rights under the insurance policy or the commitment, and that's particularly true of the Barstead case, which is kind of the latest utterance from the Washington Supreme Court. If I may make a point about the unlimited extent of the liability that the appellants are seeking to extend, I ask you to think about the closing and title insurance process as a continuum. In the old days, before Barstead, plaintiffs would sue when they suffered a title defect that wasn't excluded in Schedule B, both on the policy and in tort. And the Supreme Court kept putting off its decision about whether there was abstractor's liability. In Johnson and Shotwell and Lombardo, the court said, we're going to defer that decision for another day. But in Barstead, the court said, there is no abstractor's liability. And so when a mistake is made in the underwriting process prior to the issuance of the commitment, the redress that the aggrieved party has, if he's in privity or she's in privity of contract with the title company, is on the contract, but not in tort. Now, what the appellants have done is slide forward in the closing process to the recording. And they've said, if you record title company, an instrument that is invalid or defective or has the wrong priority, you are liable in tort. And they claim to limit that by pointing to these instructions. These are standard instructions. These instructions are given in most instances. And the liability in tort that arises from recording is the same liability that Clickman said doesn't exist at the beginning of the process. So as a practical matter, any aggrieved plaintiff, any aggrieved insured or noninsured, can simply sue on the policy, and as they used to try to do before Barstad, they can sue on the tort as well, moving the tort claim forward in time from the issuance of the commitment to the recording of the instrument. Because every time a title company issues a commitment, there's a recordable instrument that goes along with it. The recordable instrument is that which is being insured. And any error in the underwriting process will be duplicated when it gets to recording, so that an instrument that the title company misses in the underwriting process will be missed at the recording, at the search process, if there is one, when the recording occurs. What is your position on certification? Your Honor, I don't believe that it's necessary. It seems to me that there's plenty in this record that indicates what the law in Washington is or would be if this precise case was brought before the Washington Supreme Court. And I think, Your Honor, that in light of the radical nature of the liability being imposed, the radical change, the undermining of Barstad and Clickman, this is not the kind of case that should be certified because it's not seeking a marginal change in law. It's not seeking to just put the toe in the water. It's seeking a very substantial change and an undermining of existing case law. Well, that sort of has a conflicting aspect to it that you're talking about. I mean, to the extent, if they're right, that there is such a duty and it's unclear whether there is a duty now, then it would seem to me to be the Washington Supreme Court should decide that, not us. You're saying, well, they're asking for too much, so therefore you shouldn't certify it. And I'm not quite understanding your rationale there. Well, they're asking for too much because the liability they seek to impose would reinstitute abstractor's liability. It would bring us back... Well, whether they're arguing for too much, don't you think that's a question that should be argued before the Washington Supreme Court? Your Honor, I don't think certification is necessary if what the appellant is asking for is an overturning of existing state law. I think that the state Supreme Court is extremely unlikely to do that. Would you point to language, in your view, in Barstead or the other case, that you think Clickman would be overturned, if it would need to be overturned in order for the state Supreme Court to take this up and credit their position? Your Honor, I can't do that because it's not the language that would be overturned. It's the sentiment. Yes. You could put it that way, Your Honor. It's the effect of the case that would be overturned. Those people who are under Barstead not able to sue for abstractor's liability would simply be able to rename the tort, slide it down the continuum of time connected with real estate closings, and say, well, maybe you didn't make a negligent mistake in the underwriting of the policy, but when you went to record, you made a negligent mistake. You made the same mistake. And so... Isn't there a difference between the abstractor and what's happening here in terms of what they're pointing to as the foundation in terms of these instructions? Isn't that different in kind? The instructions are an added element, Your Honor. But these instructions are instructions  and every time a document is to be recorded. You may record when you are in a position to ensure that there's nothing unusual about that. It's commonplace. And it's consistent with Washington case law. What is the duty of your client to Centrum? When Centrum sends this letter on July 9, 2007, what's Chicago's responsibility? Can it reject the letter? Can it simply say, well, we're not going to do business with you, we're dealing business with the person who requested the title? Well, you'd asked about the responsibility to Centrum. That's the party that ordered the title. Is that your question? Well, I'm talking about this particular letter. You distinguished it, at least you tried to, by saying it was just nothing more than a request for insurance and actually it was an instruction from a third party. So my question to you is, what is Chicago's duty to this third party? Well, Your Honor, it's not a third party. This is equity funding, which is an affiliate of Centrum. And equity funding is saying, we want you to record only when you're in a position to insure. And Chicago Title's duty to the requesting party in that situation is to commit to issue the policy of insurance as requested or to say to Centrum, we cannot do that, we cannot insure this interest. Now, in this case, Chicago Title fulfilled its obligation, it committed to insure, it did insure, and it paid the claim. So it was in complete compliance with the instructions that it received from its insured. Your Honors, I've got about 26 seconds left, if you have any questions. I know you're over time by 28, but that's fine. Oh, I'm so sorry. Thank you very much. You're very welcome, Counsel. The other side has some reserve time. Mr. Wells? Thank you, Your Honor. I have five points that I'm going to try to make very quickly. As to Barstett and Clickman, it's both relevant and irrelevant. It's irrelevant in the sense that the only question that was presented in those cases was whether or not the nature of the work that they were to perform was in the way of a statutorily defined preliminary commitment. That's it. That was the question. So that's why it's irrelevant, because it doesn't go to the instructions that were given here. But it's relevant for this reason. The court focused on what the nature of the duty was that they undertook when they undertook the scope of services that they did, and they found that it was very limited. It was only as to the statutory definition of a preliminary commitment. So it's irrelevant in its outcome, but it's relevant in the sense that the court there did what the district court here did not. It asked what were the services that they had agreed to perform, and were they professional services, and was there the exercise of professional discretion. And, of course, your learned opponent here says, well, look at the instructions. They actually did what they committed to do vis-à-vis Centurion. But I would take issue with that, Your Honor. They didn't do what they said they would do. They didn't insure it as a valid second lien. They insured it, but it wasn't a valid second lien. Now, they say, oh, this is standard language, and this isn't everything. There's nothing in the record about that, Your Honor. That's a lawyer argument. There's nothing in the record about that. And it doesn't say, record this if you can insure it. It says, record this if you can insure it as a valid second lien. And if there was any doubt about what those instructions meant, they're bolstered by the testimony of Centurion, who gave them. The person is Elizabeth Baker. It's at ER 524. She says, we were relying on Chicago title to determine that this was a valid encumbrance. Now, if at the end of that, Your Honors, you decide, well, there's a dispute here, that's an issue of fact. It should not have been decided on summary judgment. Well, let's just assume there was a duty. Let's just assume for talking purposes there was a duty, and then you get to the end about the scope of the duty. What do you do with the Washington cases in which some say at least one of the cases, maybe the metro or the subway case says it's basically a legal question and one of the other cases says it's a factual question? Well, I think the scope of the duty, so the existence of the duty is an issue. That is clearly. Assume the existence and then. Then the scope issue is for the jury. The scope issue is how far it extends and to whom it extends. Was it foreseeable, in other words? That's the question. And foreseeability is the issue for the jury. Here, clearly, I don't think there's any doubt that even by their own testimony, they acknowledge if they filed an invalid lien, that has consequences to the property owner. So I don't think. What about the affiliated case that says it's a question of law? Well, the affiliated. What do they mean by that? Well, I think, Your Honor, it says the duty question, the existence of the duty question is an issue of law. But I think the foreseeability issue, they, I think, my recollection. They say a duty scope involves the question of law. Now, maybe they're mixing and matching existence with duty. I don't know, but that's what they said. Well, I think you may be right, Your Honor. But I have to say, here, I just don't think foreseeability is much of an issue because there's really no doubt. The foreseeability issue that arises here is, if you file an invalid lien against a property owner, could there be negative consequences? Because we're not arguing for liability against complete strangers to the title here. We're talking about the property owner. So I think, as a practical matter, it's foreseeable, whether it's a question of fact or whether it's a question of law, it's foreseeable that if you file an invalid second lien against a property, that's going to cause problems. Well, you're saying it's always foreseeable. In this? Which almost makes it, you know, not an element. Well, in this situation. I would say in this situation. No, no, I wouldn't say, let me just be clear, Your Honor. I'm not saying that it's foreseeable as to anybody. I'm saying that it's foreseeable as to the property owner. So, in other words, it could be, I mean, counsel is talking about sort of unlimited liability to the public at large. We're not talking about that. We're talking about liability to the property owner. Thank you, counsel. Thank you, Your Honor. The case just argued will be submitted for decision.
judges: O'scannlain, Tashima, McKeown